**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**Edward RONWIN, Appellant.**

No. 96–378.

Supreme Court of Iowa.

Dec. 18, 1996.

Rehearing Denied Jan. 23, 1997.

Edward Ronwin, Beaver Creek, pro se.

Norman G. Bastemeyer, Charles L. Harrington, and David J. Grace, Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

PER CURIAM.

In March 1995 the Iowa Supreme Court Board of Professional Ethics and Conduct (board) filed a complaint against Edward Ronwin, alleging violation of disciplinary rules (DR) of the Iowa Code of Professional Responsibility for Lawyers (Professional Code) and provisions of Iowa Code section 602.10112 (1995), setting forth the duties of attorneys. The complaint charged Ronwin with (1) filing a frivolous lawsuit against Susan Hill when he knew, or when it was obvious, that the suit would serve merely to harass and maliciously injure her (DR 7–102(A)(1)), (2) knowingly making false accusations against Judge Hutchison (DR 8–102(B)), (3) engaging in conduct that is prejudicial to the administration of justice (DR 1–102(A)(5)), (4) engaging in conduct that adversely reflects on his fitness to practice law (DR 1–102(A)(6)), (5) failing to maintain the respect due the court and judicial officers (Iowa Code § 602.10112(1)), (6) failing to abstain from offensive personalities (Iowa Code § 602.10112(5)), and (7) commencing and continuing a federal court action from a motive of passion and interest (Iowa Code § 602.10112(6)).

These charges arise from a lawsuit filed in Iowa district court against Hill and other defendants, a federal lawsuit in the United States District Court for the Southern District of Iowa against Hill and other defendants, their attorneys, and various members of the judiciary, and an appeal to the United States Court of Appeals for the Eighth Circuit. The federal suit and appeal were taken after the Iowa appellate court affirmed the dismissal of the lawsuit in state court and the award of penalties imposed under Iowa Rule of Civil Procedure 80.

Following hearing on the complaints, the Grievance Commission (commission) found Ronwin violated both the disciplinary rules and the Iowa statute as alleged in the complaint. The commission recommended Ronwin's license to practice law be suspended indefinitely with no possible reinstatement

for one year. The commission also recommended Ronwin participate and complete six hours of continuing education on the Iowa Code of Professional Responsibility for Lawyers.

Ronwin appealed the commission's report and recommendations. The board cross-appealed from the commission's recommendations. Our review of the appeal is de novo. Iowa Sup.Ct. R. 118.11. Before our review of Ronwin's conduct, we will address the special issues raised by him on appeal relating to the burden of proof, the claim of absolute privilege, and the constitutionality of DR 8–102(B).

## I. Burden of Proof.

In 1967 we adopted a "convincing preponderance of the evidence" standard of proof in attorney discipline cases. *Committee on Prof'l Ethics & Conduct v. Kraschel*, 260 Iowa 187, 193–94, 148 N.W.2d 621, 625 (1967). This burden of proof conforms to the majority rule and the better considered weight of authority. *Id.* Our opinion implicitly rejected the "clear and convincing" standard that was recognized in *In re De Caro*, 220 Iowa 176, 185, 262 N.W. 132, 135 (1935). We have stated the requirement is "something less than required in a criminal prosecution, and as something more than is required in a civil proceeding," *Kraschel*, 260 Iowa at 194, 148 N.W.2d at 625, "a greater quantum of evidence than that required in a civil trial, but less than that required to sustain a criminal conviction," *Committee on Prof'l Ethics & Conduct v. Hurd*, 375 N.W.2d 239, 246 (Iowa 1985), and "a greater quantum of evidence than a preponderance, but less than that required to sustain a criminal conviction." *Committee on Prof'l Ethics & Conduct v. Horn*, 526 N.W.2d 301, 301 (Iowa 1995).

We reject Ronwin's argument that the "clear and convincing" standard, the highest civil law standard of proof, is required in disciplinary cases to avoid successful constitutional challenge. We purposefully adopted the standard in *Kraschel* and rejected a more stringent standard in *Committee on Professional Ethics & Conduct v. Brodsky*, 318 N.W.2d 180, 182 (Iowa 1982).

## II. Absolute Immunity.

Ronwin argues he cannot be disciplined for statements contained in his pleadings and appellate briefs in federal court because of his constitutional First Amendment rights. He urges that all participants in a judicial proceeding have an absolute constitutional right to access to the courts and that to deny an attorney this protection, while providing laypersons with absolute immunity, would violate his equal protection rights.

The Iowa Supreme Court has exclusive power to admit persons to the practice of law in the courts of this state. Iowa Code § 602.10101. We may revoke or suspend the license of an attorney to practice law in this state. Iowa Code § 602.10121. Included in the grounds for revocation or suspension of the license of an attorney is the willful violation of any of the duties of an attorney. Iowa Code § 602.10122(3). The obligations of an attorney under the statute include the duties:

(1) To maintain the respect due to the courts of justice and judicial officers.

(2) To counsel or maintain no other actions, proceedings, or defenses than those which appear to the attorney or counselor legal and just, except the defense of a person charged with a public offense.

. . . .

(5) To abstain from all offensive personalities, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which the attorney or counselor is charged.

(6) Not to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest.

Iowa Code § 602.10112(1), (2), (5), (6).

Disciplinary proceedings against an attorney charged with violation of disciplinary rules arising from statements and accusations contained in pleadings and briefs do not infringe upon the attorney's constitutional right to freedom of speech. In *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964), the Court stated:

Calculated falsehood falls into that class of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefits that may be derived from them is clearly outweighed by the social interest in order and morality." Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.

(Citation omitted) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942)).

We have upheld the suspension of an attorney whose criticism of a judge went beyond the limits of fair criticism of the court. *In re Glenn*, 256 Iowa 1233, 1238, 130 N.W.2d 672, 675 (1964). We rejected a First Amendment claim arising from statements made by an attorney in his petitions for rehearing following supreme court decisions. *In re Frerichs*, 238 N.W.2d 764, 765-66, 768 (Iowa 1976). In *Frerichs*, we found the conduct involved is generally held not to be protected by the freedom of speech guarantee under the First Amendment, *id.* at 768, and recognized "a lawyer, acting in a professional capacity, may have some fewer rights to free speech than would a private citizen." *Id.* at 769. Our authority was derived from *In re Sawyer*, 360 U.S. 622, 646-47, 79 S.Ct. 1376, 1388, 3 L.Ed.2d 1473, 1489 (1959) (Stewart, J., concurring), where the Court stated:

A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech. . . .

In *Committee on Professional Ethics & Conduct v. Horak*, 292 N.W.2d 129 (Iowa 1980), we commented:

An attorney must not be permitted to engage in unbridled criticism of the court without basis in fact, even if, as respondent claims, it is for the ostensible purpose of asserting a basis for federal jurisdiction of a civil right claim. . . . To permit unfettered criticism regardless of the motive would tend to intimidate judges in the performance of their duties and would foster unwarranted criticism of our courts. This is obviously the gist of the rules and ethical considerations involved here. . . .

*Horak*, 292 N.W.2d at 130.

Other jurisdictions have accordingly recognized the limitations imposed upon an attorney's First Amendment rights. *See In re Graham*, 453 N.W.2d 313, 321 (Minn.1990) (attorney's First Amendment rights are not absolute in a disciplinary action); *Ramirez v. State Bar*, 28 Cal.3d 402, 169 Cal.Rptr. 206, 211-12, 619 P.2d 399, 404 (1980) (the court has jurisdiction to discipline member attorneys for defamation or disrespectful statements contained in pleadings or other court papers; "outrageous" and "unwarranted" statements concerning a judge or justice are not protected by "free speech" considerations).

### III. *DR 8-102(B)*.

We adopted the Professional Code in 1958. Under its provisions, the disciplinary rules are mandatory in character and state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. (Preliminary statement of the Professional Code.) DR 8-102(B) provides "a lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer." In *Horak*, we explained the basis for DR 8-102(B), citing Ethical Consideration 8-6, which provides in part:

While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.

■ Ronwin suggests that disciplinary rules governing the legal profession cannot punish activities protected by the First Amendment. He suggests DR 8-102(B)

could easily encourage a dishonest judge who might recognize the protection provided by this standard. We have rejected this argument. *Horak,* 292 N.W.2d at 130, 131. "Our cases make it clear a lawyer's right of free speech does not include the right to violate the statutes and canons proscribing unethical conduct." *Committee on Prof'l Ethics & Conduct v. Hurd,* 360 N.W.2d 96, 105 (Iowa 1984). *See also In re Palmisano,* 70 F.3d 483, 487 (7th Cir.1995) (the Constitution does not prevent either the state court or the federal court from penalizing a lawyer for making false accusations against judges).

## IV. *Frivolous Lawsuit—Hill.*

### A. Background.

■ On January 19, 1988, National Child Care, Inc. (National) filed a petition against Janet Dickinson, Robert Dickinson, and Susan Hill in the Iowa District Court for Polk County signed by Ronwin as attorney for the plaintiff. The petition alleged the following: In late February or March 1987, Janet Dickinson (Janet) and Ronwin orally agreed to form a corporation for the purpose of owning and operating child care centers. On March 30, National was incorporated in Iowa. Janet was to be a stockholder, director, and officer of National with responsibility for management of child care centers which National planned to build or acquire. Ronwin was a stockholder, director, and officer of National with responsibility for growth and development of National. He located potential sites, acquired real estate contracts, served as an architect, and negotiated financial agreements. Later, Janet demanded that her share of ownership in National be more than fifty percent. She also demanded that if and when National paid salaries, her salary would be greater than Ronwin's salary. Her demands were rejected by Ronwin, and Janet then severed her connection with National on October 20.

In the late summer of 1987 Hill took employment in the child care center operated by Janet. The petition alleged that, while National was attempting to secure rezoning of a tract of land in Windsor Heights for development of a child care center, Hill "insinuated herself into the process, casting deliberate disparagement upon Ronwin's efforts ... in the rezoning process, and encouraged Janet to sever her connection with National and, instead, to join with Hill in the child care business." The petition asked for damages in excess of $2 million against each defendant for lost corporate opportunities and prospective advantages, and asked punitive damage in excess of $2 million against each defendant. The petition was later amended to allege Hill knew of Janet's contractual relationship with National at the time she induced Janet to breach the contract and tortiously interfered with National's prospective business opportunities.

The suit was dismissed by the court when National failed to secure new legal counsel. On appeal we held Ronwin was a lawyer-litigant who could appear in court to testify and represent his own interest. *National Child Care, Inc. v. Dickinson,* 446 N.W.2d 810, 811–12 (Iowa 1989). We remanded for trial.

Jury trial commenced on May 20, 1991, with Ronwin and attorney Sporer appearing as counsel for National. Janet and Robert Dickinson were represented by attorney Thompson. Hill was represented by attorney Reed of Legal Aid, a nonprofit corporation. After the plaintiff rested on May 30, Judge Hutchison granted defendants' motions for directed verdicts. The court found Ronwin had no evidence against Hill that in any way supported the claims against her. After the defendants filed a posttrial motion for sanctions under Iowa Rule of Civil Procedure 80, Ronwin filed a counter motion requesting similar relief. After hearing on the motions, the court found that Ronwin had no evidence to support his claims and that his antagonism spurred him to name Hill in the original petition and to keep her as a defendant until the directed verdict was granted. The court found Ronwin was the promoter, incorporator, sole shareholder, sole officer and director, and attorney for National. It found Ronwin controlled every aspect of National and that he was the moving force in the case. The court concluded sanctions under Rule 80 should include an award of attorney fees for Hill. Counsel for Hill filed a claim for legal services totaling over $11,000.

The court awarded sanctions for legal services in the sum of $10,000, jointly and severally, against National and Ronwin personally.

Ronwin appealed both the directed verdicts and the award of sanctions. We transferred the case to the Iowa Court of Appeals. Iowa R.App. P. 401. The court of appeals affirmed the trial court's directed verdict and the Rule 80 sanctions. Ronwin filed an application for further review. Iowa R.App. P. 402. We denied further review.

A disciplinary proceeding was then commenced against Ronwin. After the commission had heard the testimony and reviewed the exhibits, including the trial transcript and Ronwin's 101–page, post-hearing brief, the commission found "the evidence is very clear and well substantiated that [Ronwin] had no basis for his lawsuit against Susan Hill. . . ." The commission also found Ronwin had filed frivolous lawsuits in both state and federal court against Hill and others.

B. Findings.

■ We find Ronwin filed and participated in a frivolous lawsuit against Hill. The board has proven by a convincing preponderance of evidence that Ronwin's actions violated DR 7–102(A)(1) and that he should be disciplined. Every lawyer has the obligation "not to clog the court with frivolous motions or appeals." *Polk County v. Dodson*, 454 U.S. 312, 323 n. 14, 102 S.Ct. 445, 452 n. 14, 70 L.Ed.2d 509, 520 n. 14 (1981).

Ronwin argues Hill's involvement in the planning and zoning meeting in September 1987, and in the settlement conference in December, supports the claim that she interfered with National's contract with Janet and its prospective business advantage.

Hill was hired by Janet to prepare meals for children attending her child care center. She applied for the position after her daughter, who was working at the center, told her of the opening. Hill's work experience since 1971 had been as a clerk in a department store. She was elected to the Clive City Council in 1986 and served in that capacity until 1990. As a council member, she had general knowledge about zoning procedures in Clive. She worked as a cook for Janet from August 1987 until June 1988. Hill had no prior experience working in a child care facility or any interest in the child care business.

She attended the first fifteen minutes of the planning and zoning meeting on September 19. Ronwin was challenging one of the board member's right to participate. After attending the first part of the meeting, Hill attended a Clive City Council budget meeting. After the budget meeting was over, she returned to the planning and zoning meeting. She observed Ronwin was caustic and threatening in his presentation of the request for rezoning. When Ronwin finished his presentation, Hill spoke on behalf of the request. She told the board she worked for Janet, that Janet ran an excellent day care facility, and that everyone needed a day care facility in their community. The request for rezoning was turned down. Following the meeting, Hill observed Ronwin and Janet in the parking lot discussing the meeting. Ronwin was very angry.

Ronwin stated he knew the planning and zoning commission would not grant the rezoning request. They had not granted such a request in the past twenty years. His hope was that the city council would overrule the planning and zoning action and grant his request for rezoning. He appealed the planning and zoning decision but the city council, at its meeting on the evening of October 19, denied his request. Janet severed her connection with National the following day.

Two potential investors, Lynn and Hillman, flew to Des Moines to meet with Ronwin and Janet regarding financing. At trial, a letter dated September 25 from Lynn to Janet was admitted as evidence. The letter suggested they would be interested in investing some money but wanted Ronwin's interest in the business reduced. In Ronwin's pleading in federal court he stated:

Just prior to the Lynn/Hillman tour of Des Moines, Janet told Ronwin that "we've got the money," from the Lynn/Hillman group; but Janet then began to demand more than fifty percent of National and destroyed the opportunities by her action.

Hill attended a settlement conference in the Davis law firm office in December 1987.

Janet had told Hill that Ronwin was suing her and a number of others, including Hill. Hill attended the settlement meeting because she wanted to know why she was being sued. Her appearance at the meeting could not have precipitated the alleged breach of the agreement on October 20. Hill did not discourage Janet from settling Ronwin's claims against her.

It is obvious the refusal to rezone the Windsor Heights property was not the result of Hill's participation at the zoning meeting. In his pleadings in federal district court, Ronwin stated: "Hill was not an intended defendant in National's action against Dickinson until after the settlement conference." Ronwin knew Hill's comments to Janet concerning the zoning meeting did not produce the alleged breach of contract, but he named her as defendant as a trial tactic. The naming of Hill as a defendant was an unfounded and frivolous claim.

## V. *False Accusation Against Judge and Others.*

### A. Background.

National and Ronwin filed a forty-nine page complaint in federal court after the Iowa appellate court had denied its appeal. Included as defendants were Judge Hutchison, Judge Donielson of the Iowa Court of Appeals, who participated in the decision, Chief Justice McGiverin of the Iowa Supreme Court, who signed the order denying further review, attorneys Thompson, Reed, Oberbillig, the Davis law firm, Janet Dickinson, Robert Dickinson, and Susan Hill. The action alleged: violation of the plaintiffs' constitutional rights under the First, Fifth, and Fourteenth Amendments; violations of 42 U.S.C. §§ 1983, 1985(2), (3) and 1986 (1994); and fraud, abuse of process, violation of fiduciary duty, and infliction of severe emotional distress.

In the complaint, Ronwin alleged Judge Hutchison's statement at the time he granted a directed verdict, "that there was not one shred of evidence that would support any possible claim," is and was deliberately false. His complaint further stated the following: "Hutchison was deliberately lying to set the stage to help Dickinson and Hill steal $30,000 from Ronwin." "The entire trial and other proceedings before Hutchison were rigged...." "Hutchison's statement, particularly on the alleged silencing of potential witnesses, is a deliberate fraud and lie, and patently so." "The acts and omissions of the defendants (including Hutchison) amount to a gigantic fraud ... to steal at least $30,000 from National or Ronwin."

The federal district court dismissed the complaint. Ronwin appealed to the Eighth Circuit Court of Appeals. In his thirty-nine page appellate brief he stated the following: "Hutchison entered a directed verdict ... on grounds ... he knew were false." "Hutchison committed these transactions in conspiracy with the appellees and with others not named as defendants in the state action...." "Hutchison's conduct amounts to criminal obstruction of justice." "The key player, Hutchison, is shown to have deliberately entered into a fraudulent directed verdict...." "Hutchison's statement as to the phrase 'macho image' was a deliberate lie." "Hutchison's conduct sums, among other things, to the deliberate entry in the state case of a fraudulent, final judgment and an equally fraudulent and fabricated rule 80 ruling." "Hutchison's entry of two deliberately fraudulent fabricated and unlawful judgments...." "Hutchison knowingly lied in fabricating the two judgments he entered in the state case." "Hutchison deliberately lied in the state court." "The trial court's action (federal district judge) gives comfort and encouragement to the criminal conduct of Hutchison...."

In his thirty-five page reply brief, Ronwin stated the following: "[National and Ronwin] presented a catalog of Hutchison's deliberate lying and biased acts which led to his entry of a fraudulent directed verdict." "Hutchison's directed verdict and Rule 80 ruling were deliberate frauds and denial of due process and equal protection of the law ... and that the proceedings from which they emulated were rigged ... trials with predetermined conclusions and the rendering of deliberately fraudulent judgments." The Eighth Circuit affirmed the federal district court's dismissal.

### B. Findings.

We find Ronwin has repeatedly accused Judge Hutchison of deliberately lying and rendering a fraudulent judgment. He charged Hutchison and other judges and lawyers with conspiring to violate his civil rights. He stated Hutchison's acts were not the result of incompetence but of deliberate criminal abuse of power. He claims Judge Strickler, an unnamed defendant, enlisted Hutchison to "get Ronwin." He stated that the acts of the court of appeals' panel were Donielson's acts and were done in the furtherance of the conspiracy, and that Donielson knowingly acquiesced in Hutchison's unlawful activity. He stated that Chief Justice McGiverin signed the denial of his application for further review "as a matter of rote and not as a product of a deliberate truly careful examination of the issues presented for appellate review. His rote signing was in support of the conspiracy," and that "McGiverin had the duty to guard against and squelch the fraud and corruption that is rife in the Fifth Judicial District."

Ronwin attacked a number of attorneys who had represented clients or provided affidavits in the lawsuit in state court. He stated that attorney Thompson "deliberately lied to the courts involved on numerous occasions, with impunity." He also stated that the Davis law firm and other attorneys in that firm were "part of a conspiracy to deprive National and Ronwin of their constitutional rights ... and to inflict various tortious injuries on him." He referred to the acts of the defendants amounting to a gigantic fraud. Ronwin alleged attorneys Thompson and Reed, and Judge Hutchison used the judicial process to foster anti-Semitism by reference to two fraudulent decisions: *In re Ronwin*, 113 Ariz. 357, 555 P.2d 315 (1976), and *In re Ronwin*, 139 Ariz. 576, 680 P.2d 107 (1983).

In Ronwin's appellate brief to the Eighth Circuit he alleged Donielson, a member of the Iowa Court of Appeals, joined in a conspiracy by deliberately approving Hutchison's actions which are patently false. Ronwin alleged McGiverin, by denying the application for further review, deliberately joined in Hutchison's actions. Ronwin stated "anyone who seriously maintains that this action is frivolous is dishonest and corrupt," adding "the [federal] trial court's action gave comfort and encouragement to the criminal conduct of Hutchison, Donielson, and other appellees."

Ronwin's pleadings and briefs filed in federal court constitute conduct that is prejudicial to the administration of justice and adversely reflects on his fitness to practice law. In prosecuting the federal suit and its appeal, Ronwin failed to maintain the respect due to the courts of justice and judicial officers, failed to abstain from offensive personalities, and maintained the action and appeal from a motive of passion. Ronwin violated DR 1-102(A)(5), (6), DR 8-102(B), and Iowa Code section 602.10112.

### VI. *Disposition.*

Ronwin states he is seventy-two years old. After serving in the Armed Forces in World War II, he attained a bachelor's degree in chemistry, a masters in chemistry, and a doctorate degree in biochemistry. He was involved in research and teaching for about twenty years. He entered law school at Arizona State University in 1971 and graduated with a J.D. degree in January 1974. He was admitted to practice in Iowa in June 1974.

In determining appropriate discipline, we must consider the attorney's fitness to continue in the practice of law, the deterrence of others from similar conduct, and assurances to the public that the court will maintain the ethics of the profession. *Hurd*, 360 N.W.2d at 105.

Ronwin maintained a frivolous lawsuit and appeal against Hill. He viciously accused Judge Hutchison of fraud, dishonesty, and conspiracy to deprive him and National of their civil rights. He made similar charges against other judges and justices because they failed to grant him the relief he requested. He also brought frivolous suits against attorneys who represented parties to the litigation.

The disciplinary rules clearly prohibit lawyers from filing a suit, or asserting a position, when the lawyer knows or it is obvious

such action would serve merely to harass or maliciously injure another. DR 7–102(A)(1). Ronwin's suits against Hill, both in state court and federal court, violated this rule. We view the suits to be particularly reprehensible because she was an innocent outsider with no financial means to defend the suits. Likewise, the suits against attorneys who happened to represent parties to the litigation were unjustified and in violation of the rule. Ronwin's repeated filing of suits and appeals without justification warrants severe punishment.

█ A court may find disbarment is justified when grossly disrespectful allegations are made, such as suggesting certain judges and justices were conspiring to conceal a crime, and when the allegations are totally unfounded and clearly a violation of the Canons of Professional Ethics. *In re Whiteside,* 386 F.2d 805, 806 (2d Cir.1967). We are not willing to tolerate repeated false malicious accusations of judicial dishonesty. Lawyers who make frivolous and unsupported allegations of criminal conduct against judges deserve harsh punishment. *See Standing Comm. on Discipline v. Ross,* 735 F.2d 1168, 1171 (9th Cir.1984).

We have considered other arguments raised by Ronwin and find them to be without merit. Ronwin's license to practice law in the courts of Iowa is revoked.

**LICENSE REVOKED.**