# IN THE SUPREME COURT OF IOWA

No. 14–1987

Filed February 5, 2016

Amended July 1, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ATTORNEY DOE NO. 792,**

Respondent.

A review of the report of the Grievance Commission of the Supreme Court of Iowa.

In this attorney disciplinary action, the grievance commission reports respondent violated a rule of professional conduct and recommends a public reprimand. **ATTORNEY ADMONISHED.**

Tara M. Van Brederode and Amanda Robinson, Des Moines, for complainant.

Attorney Doe, Des Moines, pro se.

**ZAGER, Justice**.

In this attorney disciplinary action, we are asked to decide whether an attorney's ex parte email to a judge that included allegations of unethical conduct and a cover-up violated our Iowa Rules of Professional Conduct. We find that the Iowa Supreme Court Attorney Disciplinary Board did not prove a violation of rule 32:8.2(a). However, we do find that the Board proved a violation of rule 32:3.5(b). The appropriate sanction for this violation is a private admonition.

## I. Background Facts and Proceedings.

Attorney Doe No. 792 passed the Iowa bar exam in 1997. He chose not to practice law in Iowa at that time and moved to Los Angeles in 1998 to obtain his MBA. He spent the next ten years working as a financial analyst in Los Angeles and New York. His Iowa law license became inactive in 2000.

In 2007, Attorney Doe moved back to Iowa. Attorney Doe had a dispute with a former employer and hired attorney Steve Eckley to represent him. The relationship between Attorney Doe and Eckley quickly broke down, and Eckley withdrew from his representation of Attorney Doe. The attorney–client relationship existed between October 25 and December 5, 2007. On February 22, 2011, Attorney Doe filed a pro se fee arbitration claim with the Polk County Bar Association (PCBA) Fee Arbitration Committee (committee) claiming there was a fee dispute between him and Eckley. During the course of the proceedings, Attorney Doe was uncomfortable with the level of familiarity between the members of the committee, and between the members of the committee and Eckley. Attorney Doe specifically did not like that Eckley, as the president of the PCBA, had appointed the head of the committee, among other concerns. These potential conflicts of interest were discussed prior

to the hearing, and several members recused themselves from hearing the case. Attorney Doe also made a number of untimely procedural requests to present additional information to the committee that were denied. Attorney Doe felt that this information was important and that his ability to present his side to the committee was unfairly limited because of these denials.

After a full hearing, the committee ruled in Attorney Doe's favor and required Eckley to return $3050 to Attorney Doe, which was promptly paid. However, Attorney Doe was not happy with this result. Attorney Doe believed Eckley had overcharged him by more than $25,000. Attorney Doe felt that the committee had made its ruling against him based on familiarity and favoritism. Attorney Doe appealed the ruling under Iowa Code chapter 679A by filing an "Application to Vacate Fee Arbitration Award" in the Iowa District Court for Polk County. Iowa Code § 679A.12 (2011). Judge Robert A. Hutchison was assigned to the case.

On appeal, Attorney Doe alleged two grounds upon which the award should be vacated: (1) "[t]here was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing his rights"; and (2) "[s]ubstantial evidence on the record as a whole [did] not support the award." *Id.* § 679A.12(1)(*b*), (*f*). After a hearing, Judge Hutchison ruled that Attorney Doe had failed to meet his burden of proof with respect to either ground and denied the application. Attorney Doe filed a motion to amend or enlarge the court's ruling. In a ruling filed November 15, 2012, the motion was granted in part and denied in part. At 12:31 a.m. on November 21, Attorney Doe sent an email to Judge Hutchison. The contents of the email are as follows:

Dear Robert Hutchison:

Like I stated in my motion to expand and correct your pathetic ruling; I never communicated with you exparte until now. Because you choose to play fast and loose with your ethical responsibilities and irresponsible rulings please accept this as your first exparte communication from me.

The rest you unethical behavior you can explain to your judicial committee. You should be ashamed of yourself and I'm sure you have heard this before. Your shameless cover up for your circle of buddies will not go unaddressed. Hopefully I never have to deal with your arrogant unethical behavior again.

Have a nice holiday. FYI this isn't a tactic I've used before but when observe unethical arrogant men who abuse their power I believe its important to call it as i see it just like now. In my book you're no better than the convicted scum you sentence to jail several times a month.

Shame on you.

Judge Hutchison reported the email to the Iowa Supreme Court Attorney Disciplinary Board (Board).

Attorney Doe reactivated his Iowa license to practice law on April 11, 2014. The Board filed a complaint against Attorney Doe on April 17 for the email he sent to Judge Hutchison. In the complaint, the Board alleged Attorney Doe violated Iowa Rules of Professional Conduct 32:3.5(b) (ex parte communication) and 32:8.2(a) (false statement concerning the qualifications or integrity of a judge). Iowa R. Prof'l Conduct 32:3.5(b), :8.2(a). On June 12, Attorney Doe sent an apology email to Judge Hutchison, which read as follows:

Judge Hutchison:

I wanted to extend my sincere apology for sending an emotional email on November 21, 2012 at 12:31am from my mobile phone. It was unprofessional and not indicative of my character. After learning that the Iowa Rules of Professional Conduct apply to me even when I have never worked in the profession as an attorney and when my license was inactive, I have since become fully reinstated as an active licensed attorney. As a newly reinstated attorney, I

want you to know that I intend to follow these rules at all times regardless of whether I am employed as an attorney or simply representing myself. Again I extend my sincere apology for the email and hope that you will accept.

The hearing before the grievance commission took place on August 11. The commission filed its findings of fact, conclusions of law, and recommended sanction on November 26. In the report, all of the members of the commission agreed that there was no basis in fact for the allegations included in the email Attorney Doe sent Judge Hutchison. However, the commission split 3–2 on the determination of whether Attorney Doe's email violated rule 32:8.2(a) of the Iowa Rules of Professional Conduct. The two minority members believed that the email lacked civility and professionalism. However, they also believed that it was objectively reasonable for a person from outside the Iowa legal community, who did not understand the legal process, to misinterpret the professional relationships of the attorneys involved and to conclude that they were being treated unfairly. The majority concluded that it was not objectively reasonable for Attorney Doe to believe that he was being treated unfairly. The majority concluded that a reasonable person should have been able to look at the testimony and the disclosures made by Judge Hutchison and conclude that the judge was not friends with the other lawyers in the case and was not covering up for the members of the committee. The commission also stated in its report that the entire panel agreed that Attorney Doe violated rules 33.1(1), 33.1(4), and 33.3(1) of the Standards for Professional Conduct.[1]

---

[1]Attorney Doe alleges that the commission violated his right to procedural due process by finding that he violated the Standards for Professional Conduct. There are no sanctions or penalties for violating the standards. Rather, the commission only noted that the standards "should serve as the basis for any lawyer's interaction with the Court and other members of the profession." In this opinion, we are only determining

The commission recommended a public reprimand. Attorney Doe filed a motion to amend and expand the ruling of the commission, which was denied. He followed with a second motion to amend and expand the ruling, which was also denied. Attorney Doe appealed the report and recommendation of the commission. The Board requests a license suspension between thirty days and four months. Attorney Doe argues that he did not violate our rules and requests that we dismiss the complaint. In the alternate, Attorney Doe requests a private admonition.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Id.* While we give the findings and recommendations of the commission respectful consideration, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa 2014). If we find proof of misconduct, we may impose a greater or lesser sanction than recommended by the commission. *Cross*, 861 N.W.2d at 217.

## III. Analysis.

The grievance commission was divided on whether Attorney Doe violated Iowa Rule of Professional Conduct 32:8.2(a) when he sent the offending email to Judge Hutchison. Rule 32:8.2(a) provides:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge,

---

whether Attorney Doe violated the Iowa Rules of Professional Conduct and not the standards.

adjudicatory officer, or public legal officer, or of a candidate for election or appointment to judicial or legal office.

Iowa R. Prof'l Conduct 32:8.2(a). The comments to the rule expand on the purpose behind sanctioning attorneys for making such false statements:

> Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices . . . . Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.

*Id.* cmt. 1. One of the purposes of the rule is "[t]o maintain the fair and independent administration of justice." *Id.* cmt. 3.

**A. First Amendment.** In *Weaver*, we addressed how sanctioning attorneys for statements they make implicates the First Amendment. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 80 (Iowa 2008). We first analyze whether the statement is entitled to First Amendment protection. *Id.* at 82. If we determine it is not, then we consider whether the statement violated the Iowa Rules of Professional Conduct. *Id.*

In *Weaver*, we declined to apply the subjective *New York Times* test in determining whether statements made by attorneys about judicial officers are afforded First Amendment protection. *Id.* at 81. Instead, we adopted an objective standard for assessing criticisms of judicial officers made by attorneys. *Id.* at 82. This objective standard is "dependent on what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances." *Id.* (quoting *In re Disciplinary Action Against Graham*, 453 N.W.2d 313, 322 (Minn. 1990)).

We also cautioned that there are limitations on the type of speech which we may discipline. *Id.* While all statements of opinion are not automatically given First Amendment protection, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1, 18 (1990)). Statements such as "rhetorical hyperbole" are also protected by the First Amendment if they cannot "reasonably [be] interpreted as stating actual facts." *Id.* (quoting *Milkovich,* 497 U.S. at 20, 110 S. Ct. at 2706, 111 L. Ed. 2d at 19).

The framework for our analysis, then, is to first determine whether the statements contained in Attorney Doe's email to Judge Hutchison are "sufficiently factual to be susceptible of being proved true or false." *Id.* (quoting *Milkovich,* 497 U.S. at 21, 110 S. Ct. at 2707, 111 L. Ed. 2d at 19). If Attorney Doe's statements may be proven true or false, we next determine whether the statements are actually true or false. *Id.* If we determine that the statements Attorney Doe made in his email are false, we then decide whether Attorney Doe had "an objectively reasonable basis for making the statements." *Id.* (quoting *In re Cobb,* 838 N.E.2d 1197, 1212 (Mass. 2005)). If we conclude that Attorney Doe did not have an objectively reasonable basis for the allegations in his email, and therefore the statements are not entitled to First Amendment protection, we proceed to a determination of whether those statements violated the Iowa Rules of Professional Conduct. *Id.*

1. *Type of statement.* We first must decide whether the statements contained in Attorney Doe's email to Judge Hutchison are capable of being proven true or false. *See id.* Attorney Doe alleged that Judge Hutchison "play[ed] fast and loose with [his] ethical obligations," referred

to "unethical behavior" a number of times, stated that the judge engaged in a "shameless cover up for [his] circle of buddies," and stated that the judge was abusing his power. Ethical violations, cover-ups, and abuse of judicial power are all things that are capable of being proven true or false. They are not simply hyperbolic statements. We can look to the record and facts to determine whether there was any conduct that violated judicial ethics, constituted a cover-up for the attorneys involved in the case, or amounted to an abuse of judicial power. Further, Attorney Doe reported Judge Hutchison to the Commission on Judicial Qualifications, demonstrating that he at least thought there was some type of actionable violation. Therefore, these are the types of statements that do not enjoy full constitutional protection. *See id.*

2. *Falsity of statement.* We next consider whether the statements Attorney Doe made about Judge Hutchison in his email are false. *See id.* Attorney Doe accused Judge Hutchison of committing ethical violations. In our de novo review of the record, including our review of the hearing transcript and the judge's rulings, we find nothing that would constitute a violation of judicial ethics. Attorney Doe also accused Judge Hutchison of covering up for his "circle of buddies." Judge Hutchison's interjection to correct Attorney Doe and Eckley regarding the ex-spouse of one of the committee members was not improper. Despite Attorney Doe's discomfort with the closeness of the professional relationship among the attorneys in this case, Judge Hutchison's comments and conduct during the hearing do not go beyond what a professional acquaintance would be expected to know about a member of their profession. Finally, Attorney Doe accused Judge Hutchison of an abuse of judicial power. Again, we find nothing in our review of the record, including our review of the

hearing transcript and court rulings, that shows Judge Hutchison abused his judicial discretion.[2]

3. *Existence of objectively reasonable basis for making the statement.* The commission was split as to whether Attorney Doe had an objectively reasonable basis for making the statements he did about Judge Hutchison. The members who did believe Attorney Doe had an objectively reasonable basis for his statements thought so because

> a person from outside the Iowa legal community, who did not understand the legal process, could have misinterpreted the testimony about the professional relationships between Judge Hutchison and the other members of the Fee Arbitration Committee and believed that he was being treated unfairly by a group of friends.

We consider whether Attorney Doe's conclusion that Judge Hutchison was involved in a cover-up for the other attorneys involved—whether the members of the committee or Eckley himself—was the same conclusion a "reasonable attorney, considered in light of all his professional functions, would [conclude] in the same or similar circumstances." *Id.* (quoting *Graham*, 453 N.W.2d at 322).[3] We note that Attorney Doe's initial unease with the closeness of the professional relationships between the attorneys in Polk County is understandable since he had, up to that point, not practiced law in Iowa and had been living in large, urban areas. However, there was testimony establishing that the relationships did not go beyond that of professional acquaintances. Judge Hutchison's comment regarding the ex-spouse of

---

[2]We also note that the Commission on Judicial Qualifications dismissed Attorney Doe's complaint because they found there was no evidence of judicial misconduct.

[3]We do note, however, that the commission found Attorney Doe's knowledge of the legal process at the point in time that he sent the email to Judge Hutchison to be comparable to any other pro se litigant.

a committee member is not sufficient for a reasonable person in Attorney Doe's position to conclude there was a cover-up. There was testimony by other committee members establishing that, while they may have used the word "friend" to describe their relationship with other attorneys, their familiarity did not rise past that of a professional acquaintance. One such exchange that occurred when Attorney Doe questioned committee member Jim Sayre regarding his relationship with Eckley and others in the Iowa legal community demonstrates the disconnect:

> Q. So would you state that you are not friends with [Eckley] at all? A. I didn't say close friends.
>
> Q. Would you say that Steve Eckley is a friend? A. If I see Steve, I'm going to say, "Hello." I don't recall that we have ever had any extended conversation about anything.
>
> Q. My question is: If you saw him, would you say, "He's not a friend of mine?" Would you say that? A. No, I wouldn't say that.
>
> Q. Okay. So would you say that he's a friend?

We do not find that it was objectively reasonable for Attorney Doe to make the comments contained in his email that Judge Hutchison was involved in a cover-up, engaged in unethical behavior, or abused his judicial power. Because we conclude Attorney Doe did not have an objectively reasonable basis for the allegations he made in his email to Judge Hutchison, the statements are not entitled to First Amendment protection. *Id.* We now proceed to a discussion of whether the email violated our Iowa Rules of Professional Conduct.

**B. Rule 32:8.2(a).** We have only imposed sanctions for false statements made against judges or public legal officers in a small

number of cases.[4]  The most recent disciplinary case that arose under rule 32:8.2(a) involved a private email sent to the Iowa Attorney General's office that alleged misconduct by both the Polk County Attorney's office and the attorney general's office.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 663–64 (Iowa 2013).  In the letter that Kennedy sent to the attorney general, she alleged that the county attorney's office had offered an inmate early release to testify against her client, and when the inmate refused, he was mentally, emotionally, and physically abused.  *Id.* at 663.  She also alleged that the inmate was isolated and forced to take drugs that made him unable to function normally.  *Id.*  She said that the county attorney's office was behind the coercion of the inmate and that the department of corrections would not allow her to visit any inmates, including her client.  *Id.* at 663–64.  After receiving the letter, a lengthy investigation was launched into the allegations made by Kennedy.  *Id.* at 664.  The Division of Criminal Investigation determined that all the allegations were false, and Kennedy later stipulated that her statements were false.  *Id.*  We found that Kennedy violated rule 32:8.2(a) because she did not have "an objectively reasonable basis" for the false statements made in her letter.  *Id.* at 671 (quoting *Weaver*, 750 N.W.2d at 90).  We also found that Kennedy violated a number of other rules, and her license to practice law was suspended for one year.  *Id.* at 662.

---

[4]We have previously imposed sanctions under rule 32:8.2(a) on one occasion. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 671, 677 (Iowa 2013).  The court has also imposed sanctions for violations of DR 8–102(B), a similar rule under the prior code of professional responsibility.  *See, e.g.*, *Comm. on Prof'l Ethics & Conduct v. Horak*, 292 N.W.2d 129, 131 (Iowa 1980).  DR 8–102(B) provided that "a lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."  Iowa Code of Prof'l Responsibility DR 8–102(B).

This court has imposed sanctions for false statements in four cases under the old rules. In *Weaver*, an attorney spoke with a newspaper reporter about the judge who presided over his criminal OWI prosecution. 750 N.W.2d at 77. Weaver told the reporter that he believed the judge was personally biased against him and that the judge was dishonest about the reason for imposing Weaver's sentence. *Id.* at 77–78. The next day, the reporter published an article entitled, "Bias on the bench. Ongoing court battle pits judge against retired judge as Weaver makes allegations of personal bias, dishonesty against presiding judge." *Id.* at 77. The article included multiple quotes from Weaver. *Id.* We held that Weaver violated DR 8–102(B) because he did not have an objectively reasonable basis for his false accusation against the judge. *Id.* at 89–90. We found that Weaver also violated other rules and suspended his license to practice law for three months. *Id.* at 91–92.

In *Ronwin*, an attorney made false statements about state court judges and other attorneys in pleadings submitted in federal court. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 521–23 (Iowa 1996) (per curiam). The state court had entered a directed verdict against Ronwin in an underlying civil action. *Id.* at 519. In his complaint in federal district court, Ronwin alleged that a state district court judge's statement that Ronwin's claim was not supported by "one shred of evidence" was false, that the judge was "deliberately lying" to help others steal from him, and that the entire trial in front of the judge "[was] rigged." *Id.* at 521–22. The federal district court dismissed Ronwin's complaint. *Id.* at 521. Ronwin appealed to the United States Court of Appeals for the Eighth Circuit. *Id.* Here, he alleged the judge entered a directed verdict even though he knew the grounds were false, that the judge acted in conspiracy with other parties to harm Ronwin,

that the judge's "conduct amounts to criminal obstruction of justice," and that the judge's directed verdict was fraudulent, fabricated, a lie, and criminal conduct. *Id.* The Eighth Circuit affirmed the dismissal by the federal district court. *Id.* In our disciplinary opinion, we noted Ronwin also made allegations that other judges acted in furtherance of the conspiracy and other attorneys lied to the court. *Id.* at 522. He also maintained the state court judge's acts "were not the result of incompetence but of deliberate criminal abuse of power." *Id.* We found that Ronwin violated DR 8–102(B), among other rules, and ultimately revoked his license to practice law in Iowa. *Id.* at 522–23.

In *Horak*, an attorney alleged in pleadings that the presiding judge was involved in a conspiracy against the attorney's clients. *Comm. on Prof'l Ethics & Conduct v. Horak*, 292 N.W.2d 129, 130 (Iowa 1980). Horak never contended that there was a factual basis for the allegation of conspiracy on the part of the judge. *Id.* He argued that both the judge and the grievance commission misconstrued the language in his pleading, and that he actually meant the plaintiffs were involved in the conspiracy and using the judge in the process. *Id.* He also stated that he needed to include the involvement of the judge in his pleading in order to allege state action that would allow him to present a claim for deprivation of civil rights. *Id.* We found that the statement in the petition was false and Horak knew the statement was false at the time it was made. *Id.* at 131. We held Horak violated DR 8–102(B) and he was reprimanded. *Id.*

In *Frerichs*, an attorney filed a petition for rehearing that included allegations of deceit by this court in processing criminal appeals. *In re Frerichs*, 238 N.W.2d 764, 765 (Iowa 1976). In his petition, Frerichs alleged that the court was "willfully avoiding" addressing constitutional

claims he made in three different client cases. *Id.* In a previous petition for rehearing, Frerichs stated the court's conclusions in that case were baseless and ignored trial records and other facts. *Id.* at 766. We found that Frerichs violated DR 8–102(B) by making false statements about the court. *Id.* at 767. We noted that, setting aside judicial immunity, the allegations made against the court and the individual justices could be indictable misdemeanors or felonies. *Id.* at 767. We ultimately admonished Frerichs for his conduct. *Id.* at 770.

Attorney Doe argues that there should be a distinction under rule 32:8.2(a) between when the statement is made in public and when the statement is made in private. He argues that publication is key under the rule, and when there is no publication, there can likewise be no violation. While there is nothing in the language of the rule itself that would suggest the false statement needs to be made publicly rather than privately, we have only found violations of this rule when the false statement was made either publicly or to a third person. *See Kennedy*, 837 N.W.2d at 663–64 (involving an email sent to the attorney general's office alleging misconduct of other attorneys—namely, members of both the Polk County Attorney's office and the Iowa Attorney General's office); *Weaver*, 750 N.W.2d at 77–78 (involving an attorney who told a reporter the presiding judge was dishonest and biased); *Ronwin*, 557 N.W.2d at 521 (involving a number of allegations against judges made in pleadings submitted in federal court); *Horak*, 292 N.W.2d at 130 (involving allegations made against a judge in pleadings to the court); *Frerichs*, 238 N.W.2d at 765–66 (involving false allegations made about the court in pleadings). Attorney Doe's email to Judge Hutchison, in contrast to our previous cases, was private. It was sent directly to the judge's state email and no one else. The offending email is unprofessional; however,

the email does not rise to the same level as the conduct in the five cases where we have found violations of this rule.

Additionally, one of the purposes of the rule is to "maintain the fair and independent administration of justice." Iowa R. Prof'l Conduct 32:8.2(a) cmt. 3.

> Rule 8.2(a) does not differentiate between statements made in or out of court, or by lawyers connected or unconnected to a particular proceeding. However, those factors are relevant to both the First Amendment analysis and to concerns about actual disruption or actual interference with the administration of justice.

2 Geoffrey C. Hazard, Jr., W. William Hodes, & Peter R. Jarvis, *The Law of Lawyering* § 67.03 at 67-7 (4th ed. 2015).

We note the distinction between this case and the cases in which we have found a violation of rule 32:8.2(a) or DR 8–102(B). In *Kennedy*, the email sent by the attorney spurred a lengthy and costly investigation into the allegations of misconduct and coercion. 837 N.W.2d at 663–64. In *Weaver*, the attorney's statements resulted in a published newspaper column that included allegations of bias and dishonesty by the presiding judge. 750 N.W.2d at 77–78. In *Ronwin*, *Horak*, and *Frerichs*, the allegations of judicial misconduct were made in pleadings to the court, thereby disrupting or slowing down the legal process. *Ronwin*, 557 N.W.2d at 521; *Horak*, 292 N.W.2d at 130; *Frerichs*, 238 N.W.2d at 765–66. This is in contrast to the situation here, where Attorney Doe sent a private email to Judge Hutchison that did not itself result in any disruption of the legal process. Though unprofessional, we cannot conclude that the email hindered the fair and independent administration of justice. Because this situation is considerably different than the prior cases in which we have found a violation, we find that the Board failed to prove a violation of rule 32:8.2(a).

**C. Rule 32:3.5(b).** Although the commission did not find that Attorney Doe violated rule 32:3.5(b), so long as the Board utilized our established process for rule violations, we are still entitled to review this rule violation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 178 (Iowa 2005). We have summarized the proper process the Board must take when charging an attorney with a rule violation:

> [T]he . . . Board may investigate complaints regarding attorney misconduct. When, based on the investigation, the Board determines prosecution is warranted, the Board may file a complaint against the attorney with the commission. A panel of commissioners is then selected to hear the evidence, and may either dismiss the case, issue a private admonition, or recommend that we reprimand the attorney or suspend or revoke the attorney's license to practice law. In any case in which the commission recommends a reprimand, suspension, or revocation, the commission files findings of fact, conclusions of law, and recommendations in this court. While we are respectful of the commission's findings, conclusions, and recommendations, we engage in a de novo review of the record. The overarching purpose of this disciplinary process is to aid this court in exercising its responsibilities in regulating the legal profession in Iowa.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Att'y Doe No. 762*, 839 N.W.2d 620, 622 (Iowa 2013). Thus, as long as the proper procedure was followed by the Board in charging and giving notice to the attorney, we are able to review the entire record on our de novo review. *See id.* "[W]e ultimately decide what discipline is appropriate under the unique facts of each case." *Zenor*, 707 N.W.2d at 178 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Shinkle*, 698 N.W.2d 316, 318 (Iowa 2005)). The key in our consideration of the rule 32:3.5(b) violation is whether the Board "prove[d] attorney misconduct by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 582 (Iowa 2015).

In previous cases, so long as the Board originally charged the attorney with a rule violation, we still considered it on our de novo review even if the commission did not find the Board proved a violation. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d at 698 (discussing a rule violation because it was charged by the Board, but ultimately agreeing with the commission that there was no violation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 440 (Iowa 2012) (finding there was a violation of the rule even though the commission determined there was no violation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 532 (Iowa 2011) (finding a violation of a rule that was charged by the Board even though the commission did not find a violation).

In its original petition, the Board alleged that Attorney Doe violated rule 32:3.5(b). Rule 32:3.5(b) provides that a lawyer shall not communicate ex parte with a judge, juror, prospective juror, or other official during the course of a proceeding unless they are authorized to do so. Iowa R. Prof'l Conduct 32:3.5(b). The comments expand on the rule and state that "[d]uring a proceeding a lawyer may not communicate ex parte with persons serving in an official capacity in the proceeding, such as judges, . . . unless authorized to do so." *Id.* cmt. 2.

We think it is clear that the Board demonstrated by a convincing preponderance of the evidence that Attorney Doe violated rule 32:3.5(b). The email that Attorney Doe sent Judge Hutchison was sent "during the proceeding." *Id.* r. 32:3.5(b). On April 20, 2012, Attorney Doe filed the action in district court appealing the decision of the fee arbitration committee, thus beginning the course of the proceeding assigned to Judge Hutchison. On October 25, Judge Hutchison issued his order denying Attorney Doe's application to vacate the arbitration award. On

November 5, Attorney Doe filed a motion to amend or enlarge the findings and conclusions of Judge Hutchison's order. On November 16, Judge Hutchison denied the motion. On November 21, while the case was still under the jurisdiction of the district court, Attorney Doe sent the email in question. *See* Iowa R. App. P. 6.101(1)(*b*); 9 Barry A. Lindahl, *Iowa Practice Series*: *Civil Practice Forms* § 19.30, at 898 (2015) ("The general rule is that the district court loses jurisdiction over the merits of a controversy once an appeal is perfected."). Attorney Doe filed an appeal of Judge Hutchison's ruling on November 26.

Further, the email was sent to Judge Hutchison when he was acting in his official capacity during the proceeding. Iowa R. Prof'l Conduct 32:3.5(b) cmt. 2. The email itself acknowledges that it is an ex parte communication, and Attorney Doe has repeatedly admitted to sending the email to Judge Hutchison. We disagree with the findings of the commission and find that the Board proved by a convincing preponderance of the evidence that Attorney Doe violated rule 32:3.5(b).

**D. Notice of Charges.** Arguably, Attorney Doe may have violated several of our rules of professional conduct. However, the Board only charged him with violations of rule 32:3.5(b) and rule 32:8.2(a). Further, the commission's report raised for the first time violations of the Standards for Professional Conduct. The commission found that Attorney Doe violated rules 33.1(1), 33.1(4), and 33.3(1) of the standards.[5] As noted by the commission, there are no sanctions or

---

[5]Rule 33.1(1) states that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms." Iowa Ct. R. 33.1(1). Rule 33.1(4) notes that the standards are in place to "achieve the twin goals of civility and professionalism." *Id.* r. 33.1(4). Rule 33.3(1) instructs lawyers to "speak and write civilly and respectfully in all communications with the court." *Id.* r. 33.3(1).

penalties for violating the standards. But more significantly, Attorney Doe was never put on notice of any of these alleged violations under the standards until the point at which the commission found that he violated them. *See In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 123 (1968) ("This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process."). Attorney Doe should have been put on notice of all the charges against him the commission would consider in his disciplinary proceeding. Otherwise, the proceedings "become a trap when, after they are underway, the charges are amended." *Id.* at 551, 88 S. Ct. at 1226, 20 L. Ed. 2d at 122. The lesson here is that while Attorney Doe may have violated other ethical rules, it is incumbent on the Board to properly raise the alleged violations in order to provide proper notice of the charges to the attorney. It must then prove the violation by a clear preponderance of the evidence.

**E. Sanction.** Having found that Attorney Doe violated rule 32:3.5(b), we turn to a discussion of sanctions. The issue of sanctions has been hotly debated in this case, with recommendations at various points throughout the proceedings ranging from a public reprimand to license revocation. Ultimately, the commission recommended a public reprimand, the Board requested a license suspension between thirty days and four months, and Attorney Doe requested a private admonition.

Although we find our prior cases to be instructive, "[t]here is no standard sanction for [any] particular type of misconduct." *Blessum*, 861 N.W.2d at 591 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014)). Rather, we "determine an appropriate sanction based on the particular circumstances of each

case." *Morris*, 847 N.W.2d at 435 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)).

> When crafting a sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Blessum*, 861 N.W.2d at 591 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013)).

We have previously heard cases in which one of the violations was an ex parte contact with a judge; however, we have no reported cases involving only a violation of rule 32:3.5(b) and no other rules. In our cases where we found an improper ex parte communication, in addition to other violations, we have imposed sanctions ranging from a thirty-day suspension to a three-year suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 684 (Iowa 2010) (three-year suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ackerman*, 611 N.W.2d 473, 474–75 (Iowa 2000) (thirty-day suspension); *Comm. on Prof'l Ethics & Conduct v. Postma*, 430 N.W.2d 387, 392 (Iowa 1988) (six-month suspension).

In the cases where we have decided to impose a sanction for an ex parte communication with a judge, the behavior in question was much more egregious than sending a single, unprofessional email to a judge. In *Johnson*, the attorney presented an improper ex parte order to the court without the consent of his opposing counsel. 792 N.W.2d at 680. In *Ackerman*, the attorney presented an ex parte dismissal order to the judge without advising the county attorney. 611 N.W.2d at 474. In *Postma*, the attorney presented an ex parte order to the judge that included false information about the opposing party. 430 N.W.2d at

390–91. In each of these cases, the attorney's conduct "hampered the efficient and proper operation of the courts." *Johnson*, 792 N.W.2d at 680 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)). This did not occur in this case.

We must also consider any mitigating and aggravating factors when we determine the appropriate sanction to impose for a violation of our rules. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 700 (Iowa 2015). Attorney Doe testified at the hearing in front of the grievance commission that he was under a great deal of stress at the time he sent the email. He said that he was struggling with issues in his personal life. His mother and grandmother had recently passed away, his dog had died, and he was alone for Thanksgiving. He was also suffering financial stress as a result of the dispute with his previous employer and was concerned about the state of the stock market. Although we acknowledge the reasons stated for Attorney Doe's decision to send the email to Judge Hutchison, we do not find them to be an excuse.

However, we do find that there were mitigating factors present. There have been no previous disciplinary actions against Attorney Doe. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 294 (Iowa 2013). No clients were harmed by Attorney Doe's actions. *Ricklefs*, 844 N.W.2d at 700. Attorney Doe did take responsibility for his actions by apologizing to Judge Hutchison and admitting that his email was unprofessional. *Id.*

While Attorney Doe's email was unprofessional, we do not believe a license suspension or a public reprimand is the appropriate sanction. However, had we found other properly charged and proven violations, a public sanction would be appropriate. Instead, we choose to privately

admonish Attorney Doe. We do note that, while a private reprimand is not discipline, it serves as a warning and puts the attorney on notice that his or her behavior violates certain ethical requirements. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015). Likewise, in imposing only a private admonition, we are in no way minimizing or condoning the unwarranted and unprofessional attack on a judicial officer.

## IV. Conclusion.

For the above reasons, we find that the Board did not prove Attorney Doe violated rule 32:8.2(a) of the Iowa Rules of Professional Conduct, but the Board did prove Attorney Doe violated rule 32:3.5(b) of the Iowa Rules of Professional Conduct. We privately admonish Attorney Doe.

**ATTORNEY ADMONISHED.**

All justices concur except Appel, Waterman, and Mansfield, JJ., who take no part.